Thank you. Good morning. May it please the court, my name is Thomas Riley and along with co-counsel Ann Peterson, we're from the Douglas County Public Defender's Office in Omaha, Nebraska, and represent the appellant Marqus Patton, who was disappealed from a denial of a habeas corpus petition by the U.S. District Court. I would like to reserve three minutes for rebuttal. Mr. Patton is doing a life sentence and an additional five to fifteen for first degree murder and that was conviction in state court. The basic facts are that the homicide occurred as a result of a home invasion where multiple individuals entered the house with the intent to steal property, drugs, and or money. The state's two primary witnesses are a 15-year-old woman named Guzman and a multiple convicted felon, Northrop, who by their own admission participated and planned this event. Guzman puts Marqus Patton in a car that drove up to the house before the entry occurred. She testified she did not see who actually entered the house. Northrop is the only individual who claimed that the incident entered the house and was one of the two people that had a gun and committed the shooting. The first trial was a hung jury. The second trial was a conviction. We direct appeal which was denied. We then filed a state petition for post-conviction relief at which time we raised the issues that the state failed to or the witnesses failed to admit that they had a plea agreement during the trial testimony and that in fact there was a plea agreement. As a matter of fact, Judge Battalion who is the U.S. District Court judge agreed factually with us but denied relief because he deferred to the state court's decisions. What I think is important here is the fact that during the trial we confronted both Guzman and Northrop. Did you have a deal? Guzman was hoping to get transferred to juvenile court but said we had no deal. Northrop... But you elicited, I'm sorry, counsel elicited testimony right that there was hopes to go to juvenile court? Yes. So the jury was fully aware that there was a potential motive there to cooperate or to falsify evidence or whatever? The jury was definitely made aware that they had a hope for some type of relief including juvenile court. As a matter of fact, at the trial, I made an offer of proof. I wanted to call her lawyer who admitted that they in fact did have an agreement to go to juvenile court. He acknowledged that outside the presence of the jury and said the only thing I don't know is the mechanism we are going to use to get her there. The difference between doing a life sentence and doing some juvenile court probation and or time is significant. Northrop also acknowledged that he had hopes for a deal. Counsel, the state courts viewed all of this and made a determination that there was not reversible error. And our review as Judge Battaglia noted in federal court is deferential to the state. So that in essence your burden here is to show that the resolution made by the state is unreasonable. What's your authority for that proposition and why we should be persuaded that this was an unreasonable determination by the state court? I apologize for interrupting. I'm sorry. We did cite and Judge Battaglia did note an Eighth Circuit Court case, Roediger v. Solem, which is admittedly older, a 1989 case. We cited it in our brief initially and Judge Battaglia distinguished it but in that case, the Eighth Circuit Court of Appeals indicated that the failure to disclose to the jury that the state's witness in a similar type of testimony was going to have a parole hearing and it got continued until after he testified, was improper and I think misleading and highly improper. I don't see very much of a difference. There is a hope, there would be a hope there. In this particular case, what's sort of the difference between an implicit plea agreement and basically all of the information you pulled out from these witnesses? I know it's a label and it's probably, it's significant for purposes of cross-examination, I understand, but isn't it kind of the nature of implicit is that it isn't expressed? So I'm just kind of curious what the difference between the two would be. Well, to me, this is a practice that, I mean, there have been a lot of articles written about it and I cited one as did Judge Battaglia in his order, you know, like with all due respect to prosecutors, it's a game prosecutors play and talked about these tacit agreements and the methodology that's used. But the game, I guess, the games they play also benefit criminal defendants in some cases, right? I mean, the two witnesses. Not mine. Well, true, but I mean, and I'm sorry I jumped on Judge Kelly's question because I'm kind of interested in that too. What really is the importance of a formal definition of a tacit or implicit plea agreement as opposed to everything you got here? Yeah, honestly, a rose is a rose by any other name. I agree. And, you know, honestly, you know, I'm a trial lawyer. I don't do this very much. But one of the things I do when I'm picking a jury and I have a case like this, I'll ask the jury, what would you think if I paid a witness to testify? Oh, my God. What's the difference if the state is basically not monetarily but paying a witness to testify, not but with money but with freedom? Were you able to argue before the jury in closing that there was benefit attributed or given to the witnesses for their testimony? Well, I was able to argue that there was hope that the prosecutors have basically the option of doing what they want with these witnesses. But what I would like to put some emphasis on is that after the direct appeal, we had a post-conviction hearing. And we presented evidence that Northrup had told another, his cellmate, prior to trial that he had basically a 10-year deal, but he couldn't disclose it. And is that more of an evidentiary problem? In other words, he never came in and was willing to say that, yes, I said that. So, I mean, maybe the case would be different if he had come in and actually been willing to testify in the post-conviction? He did testify in the post-conviction. To what? He did testify and he beat around the bush and, well, no, I didn't have a deal. And then after he testifies, he goes back to the county jail and he calls our office and he says, I lied. I do have a deal. Come and talk to me. So, I sent our trial assistant over to the jail and he says, yes, I did have a deal, but I was told I couldn't testify to it, or I shouldn't admit it. So, we said, okay, my trial assistant called and said, what do I do now? I said, get back here, we'll drop an affidavit, because he was getting out of jail the next day. And he didn't, and I guess that's his point about maybe if he had signed the affidavit. You know, he didn't, but we have evidence that we presented at the post. And what I guess I'm getting at, when I looked at some of the cases dealing with this type of thing, Wilson v. Sellers about looking through to the most recent state court opinion. In those cases, the appellate court said affirmed without an opinion, but they relied on the state court's most recent opinion, which would have been like at a post-conviction hearing. In this case, after we had our evidentiary hearing on post, there was a four-year gap between the evidentiary hearing and the judge finally making a ruling that simply said, post-conviction denied. So, there's actually no opinion upon which we can look through back with all of the facts that occurred at the hearing on the post-conviction. Also, basically what happens is the court, the judge battalion, instead of basically saying, hey, wait a minute, I disagree with the state court and looking through, looking back to the most recent opinion, it was the direct appeal that didn't have any of the evidence that we presented at the post-conviction. So, I think that there's a difference between Wilson v. Sellers and what we have here. Had judge battalion recognized that, wait a minute, I think that there was a tacit agreement and there was a plea agreement and this is not the type of thing we should be doing, but I'm going to defer to the state court. But the difference to the opinion that he's relying on is the direct appeal, which had nothing to do with, as far as an actual opinion, had none of the evidence that we presented at the post-conviction. Mr. Riley, before your rebuttal time comes up or you get into it, would you address the timeliness issue of the filing of the habeas in this case? Yes. As an issue as to whether or not it was within the time limit? On the equitable tolling. We were dealing with a situation where the defendant was in Tecumseh, in the prison in Tecumseh, Nebraska, which admittedly is, you know, a two-hour drive from Omaha. This was during COVID and we believed that it was imperative. But 238 days, I think, was the number, had elapsed before COVID even came up and there was no action taken. Is that accurate? That's accurate because it also included the time, you know, between the Supreme Court's opinion and the post-conviction filing. That time was included. So what happened is we were pretty much, I don't mean to be overly dramatic about it, but honestly, these guys were being held incommunicado down at Tecumseh. We couldn't get phone calls to them. They couldn't make phone calls. The written correspondence was brutal and I think Judge Battalion acknowledged that this was a very unusual, it was a once-in-a-generation event that prevented us from communicating with him. Because we had to make sure that he understood that he may be waiving some post-conviction ineffective assistance of counsel issues. And I didn't want him to take this action without knowing here are the long-term ramifications. And I think that additionally... So what was the due diligence that was taken? What efforts were made? We made, we sent letters. We were, like I said, we couldn't make phone calls. We did go down there and we were deprived of getting it because they were all in, they called it lockdown. Basically, they were in, because of COVID, they were restricted to their cells. They wouldn't allow, there was no family visitation, no attorney-client visitation. Sometimes they would open it up, but they wouldn't tell you. So you'd call two days ahead and say, okay, I'm coming down on Thursday. Then you show up on Thursday, sorry, we're in lockdown. It was a mess and it was very frustrating. The other thing is, I also think that the way this has been presented, the state should have filed a cross-appeal, not just raise it. And I think Jennings v. Stevens, which is a U.S. Supreme Court case, talks about the propriety or impropriety of... Couldn't it just be an alternative? Yeah, that's what Jennings v. Stevens says. But in Jennings v. Stevens, the alternative theory was still a substantive theory, not a procedural bar. And I think there should be a difference between the two, that given the fact it was a denial of a summary judgment, it should have necessitated a cross-appeal, which the state did not do. I only have about 20 seconds left, and I'll try to save it for rebuttal if that's okay with the court. That's fine. Thank you. Thank you, Mr. Riley. Mr. Villianco? Good morning, Your Honors. May it please the Court, Zachary Villianco, Acting Solicitor General on behalf of the Appellees. The United States District Court entered a judgment denying Marcus Patton his requested federal habeas relief. That judgment should be affirmed for one of any three independent reasons. The first reason is his procedural noncompliance with the requirements of any federal statute. The Anti-Terrorism and Effective Death Penalty Act of 1996. Mr. Patton's habeas petition was not timely filed, and he was not entitled to equitable tolling. Second, Mr. Patton, even if his was timely filed or he was entitled to equitable tolling, the District Court correctly deferred to the State Court's reasonable factual determinations about the key facts that underlie Mr. Patton's federal habeas claim. And finally, even if the State Court's factual determinations were unreasonable, and they were not, but if they were unreasonable, his constitutional claims fail because they were not material, and therefore there was no harmful constitutional violation that can be the basis for federal habeas relief. I'd like to ask you just a preliminary question about your first point. And this, it's that this is before us on our Certificate of Appealability, correct? So, Judge Battalion granted their certificate on one issue, and that's on the tacit plea agreements, correct? Yeah, yes, Your Honor. Two legal questions, but one central factual question, yes. And he ruled in favor of Mr. Patton on the timeliness issue, right? And so there's no Certificate of Appealability on that? There was no need for a certificate, because he had, I mean... Now, you could appeal it, but can you piggyback on the Certificate of Appealability, or do you need to resurrect that issue by cross-appealing as an alternative? And I understand the sort of general idea that we can affirm on any grounds in the record within certain limitations, but we're on a Certificate of Appealability where we often will say, well, they only granted our certificate on one, and you got to get special permission to expand it. But as the state, you can appeal, but don't you have to sort of do that on your own to get that issue in front of us? Because it's not part of the certificate. No, Your Honor. Jennings v. Stevens discusses the appropriateness of looking to alternative grounds in the context of federal habeas. Jennings v. Stevens is a federal habeas case, a sort of unusually postured one, but nevertheless a federal habeas case. So you think that the scope of the Certificate of Appealability, and then you can move on to your other issues. I just want to make sure I understand that you think the scope of the Certificate of Appealability includes your ability to ask us to affirm on any grounds? Absolutely, Your Honor. And the reason, I'll just briefly address it, is that Jennings v. Stevens, the court embraced the usual American rule of appellate procedure that's set forth in the American Railway Express case. And it talks about that a cross appeal is only required when relief would enlarge the appellee's right or lessen the appellant's. And there's no enlargement of the state's rights here, or there's no reduction of the appellant's rights. The claim that he has made is an entitlement to federal habeas relief. That was denied. And so at the end of the day, the judgment that is being reviewed, and it's of course important to remember this court only reviews judgments, doesn't review, for correctness, the opinions. The judgment is that he is not entitled to habeas relief. The district court found that he was not entitled to it. And we are asking this court, we are proffering a reason to affirm that judgment. Doing so will not change Mr. Patton's rights. He has at present no entitlement to federal habeas relief and must continue to serve his sentence. And if you affirm on the basis, the procedural basis that we have proffered, it will not change his rights. It will not enlarge the state's rights in any meaningful sense. And so that's why we considered the requirement to take a cross appeal. We did research into this issue and determined that it was not necessary. And that's why we proceeded under the pathway that we took. I'll start just talking about the procedural requirement briefly, Your Honor, because we do think it's important. Equitable tolling is available in rare instances in federal habeas proceedings. But it is an exceedingly rare pathway to escape the procedural requirements of AEDPA. And it requires, the burden lies on the petitioner, and it requires two showings. The first showing is reasonable diligence throughout the period up to the filing of the petition. And the second is that there is a showing of an extraordinary circumstance beyond the control of the petitioner that stood in the way and prevented, made impossible, a timely fine. Wouldn't you consider a worldwide pandemic something that's unusual and could constitute extraordinary circumstances? The state does not contest the notion that the COVID-19 pandemic or a similar occurrence could qualify as an extraordinary circumstance, maybe even has qualified as an extraordinary circumstance. But it's not just that it was an extraordinary circumstance. It has to show specifically how that extraordinary circumstance impacted the petitioner in particular. Counsel says they tried to make visits and couldn't make them. They tried to make calls and couldn't complete them. So, Your Honor, the first thing I'll say is what we have in the record, and I recognize this court can take judicial notice. Mr. Riley was trial counsel, so he has information that I don't have access to. What the district court had in front of it was an affidavit. That's the only piece of evidence that discusses... Well, the affidavit speaks generally about the prison. Wouldn't you agree with that? It does. Are you suggesting the only thing missing here is that the petitioner's name wasn't included in each one of these, that he was subject to the lockdowns, that he was subject to these phone restrictions? I mean, what's missing from the affidavit? There's nine paragraphs here kind of laying out the prison situation. So, I think, Your Honor, there are two facets that are missing from the affidavit. The first thing that I'll highlight is there is nothing about reasonable diligence. We have no evidence about what Mr. Patton was doing to end the substantial amount of time. He missed his deadline by a seven-month period. There is nothing that describes what actions he was taking during those seven months after the deadline, the EDPA deadline had expired, to illustrate that he was attempting to... He was even aware that he had rights and that he was trying to vindicate them. It doesn't discuss if he took phone calls. It doesn't discuss if he wrote letters. It doesn't discuss if he was preparing a petition. And if you compare that, for example, with the Holland case from the Supreme Court, where you look at a situation about what a petitioner needs to do to illustrate reasonable diligence, none of the things that the Holland petitioner did, that the Supreme Court found were sufficient to establish reasonable diligence, nothing in the affidavit discusses what Patton was doing. So, we have nothing on that showing. And then, if you look on the second prong, again, we're not challenging that the COVID-19 pandemic may have been an extraordinary circumstance. Likely was. It's that what in particular about the pandemic prevented Mr. Patton from filing, made it impossible, stood in his way. The affidavit talks, for instance, about how he had limited telephone access. It didn't say he has no telephone access. You heard from my friend on the other side just a few moments ago that there were letters sent, that there were abilities somewhat restricted abilities to communicate. And if you look to this court's precedent, the Mohammed versus United States case is an excellent example where this court denied equitable tolling when a petitioner, a prisoner, was in the special housing unit, effectively solitary confinement, for a five-month period, completely without access to his legal papers, unable to go to the law library, but still had some limited ability to communicate with his He sent letters. He was not prohibited from contacting the court. He had the ability to get mail. And in the Mohammed case, this court denied the individual from receiving equitable tolling. So if that sets the precedent, if being housed in the SHU, the special housing unit, for five months without access to your papers and only ability to communicate by letters is not enough to entitle you to equitable tolling, then Mr. Patton has not made the showings that are necessary. You would agree that it's very fact-specific and that while there may be analogies, I'm not sure that we can just say that that particular case is the one from which we springboard. This was COVID. And I think they've described, as we've been discussing, some pretty stringent limitations. So I'd hesitate to say that unless you are in the SHU for more than five months and, you know, relating it to the facts of that particular case, you're never going to get it. I certainly agree, Judge Kelley, that this is a fact-specific inquiry. And we don't dispute that in the slightest. I would emphasize that the analogy is useful. And also, I would point, I would also like to pivot to what Judge Smith suggested earlier during my friend on the other side's argument. There was almost 10 months of the EDPA limitation period that had expired before the COVID-19 pandemic even took place. So it's not as if Mr. Patton's EDPA limitations period began and then he had a duty to file and the COVID pandemic absorbed his entire period. I mean, the significant portions of his limitations period, the one-year period, had already been fully exhausted by the time the pandemic restrictions happened. I want to switch a little bit before you run out of time. Would you address your colleague's assertion that the district court was wrong to defer to the factual findings of the state courts because there was no opinion on the post, at state court, at the post-conviction level this concept that you look through to the last opinion? I think the suggestion was made that that's a problem here because there was no opinion at the post-conviction stage. It's not a problem, Your Honor. If you look to both Wilson v. Sellers, you can look back to Ulysses v. Nunmaker. In EDPA cases, it is appropriate to look back as long as the legal issue has been raised by the state judiciary and the legal issue, the relevant legal issue, the existence of tacit plea agreements raising Brady and Napoo claims. Those were addressed by the state Supreme Court, the Nebraska Supreme Court, on direct appeal. They were then raised again in the post-conviction process. When you have what is called a formulary order, an unexplained order, it is entirely appropriate for a federal court to look through back to the last reasoned decision that addressed that claim and assume that the state's subsequent unexplained orders, which were merits determinations, relied on the previous determination by the last court that issued an explanatory opinion. That's what we have here. Again, the question of whether or not there were tacit plea agreements and whether or not those raised a constitutional violation was presented before the state Supreme Court on direct appeal. It was then reiterated during the post-conviction process. There was a summary order by the state trial court at that point and then a very brief, largely unexplained, but nevertheless merits determination by the Nebraska Supreme Court saying we've reviewed the record. We find no error. What Sellers and Ulysts talk about is that it is often realistic, given the substantial number of post-conviction claims that are addressed, that the state judiciary, if it would find there to be new evidence that was meaningful, they would write a new opinion. If they are unconvinced by the new evidence, if they effectively say there's nothing new to see here and they just say affirmed or something very similar to that, it is reasonable for federal courts to look back, presume that the state judiciary would have issued the exact same opinion or relied on the same rationale as the last reason decision. That's what we've done here. Do you have a case where that's the situation that we have here, where we're asked to presume that they found none of the evidence that was presented in the post-conviction at all relevant? And so we look back to the Supreme Court, the last Supreme Court decision in the state? Well, I think that's the principle that lies at the heart of Sellers. It's the principle that Justice Scalia's Ulysts opinion talks about. And are those cases, do they have a series of hearings or additional evidence that is presented? I don't want to overstate my case, Your Honor. I can't say that's exactly the circumstance in Sellers or Ulysts, but the principle nevertheless is applicable here. And again, I think Justice Scalia talked about, he says that there's a sound presumption that when one reason state judgment rejecting a federal claim has occurred, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground. And so what he's saying there is that if there truly was a problem, if the new evidence gave the state judiciary pause, they would have written a new order. And the fact that they didn't, we can appropriately presume that they were convinced by their previous rationale. Your Honor, I see my time has expired. If there are no further questions, I'll just say that we would ask that you affirm the order, the judgment of the District Court of Nebraska on one of the three grounds that we have presented and continue to deny Mr. Patton his request for federal habeas relief. Thank you. Thank you, Mr. Villionco. Mr. Riley, you had used up pretty much all your time, but we'll give you an extra minute to ask you several questions. Thank you very much. I would like to emphasize the Wilson v. Sellers. In that case, there was a lower opinion, lower court opinion that addressed the facts that were subsequently presented at, I think it was a state habeas. But there was a fact-based substantive opinion. The highest court did not. So I would ask you to re-examine Wilson v. Sellers and determine that there is a significant difference between what we have here and what we have in the Sellers case. I don't think there's been a case that answers it in the form that Kelly just described to the opposing counsel. As far as, I didn't address the materiality or the prejudice. What happened after the post conviction is, or after the trial, Guzman got transferred to juvenile court, just like she hoped, but wasn't promised. Northup got a flat 10-year sentence, which in Nebraska is five, and he, as you know from the record, the day after he testified at the post, he disappeared. Had the jury known that, it's just like when I was talking earlier about buying witnesses, it's like if the jury knew you're going to get 50 years and you're still willing to come in here, that shows that there's some truth to it. But you're getting a 10 years, that's a big deal. That's a big deal. These folks are walking around out there, and Mr. Patton is doing life, based primarily on the testimony of these two people, who, I suggest to you, did not tell the truth to the jury. As I said, this was a hung jury the first time, and the second time we got a conviction, but there's more evidence that was presented at the post that has never been addressed, other than by Judge Battalion, and I suggest he made an error when he deferred to the state court's original affirmation on direct appeal, and I thank you for the extra time. Thank you, Mr. Riley. Thanks to both counsel for participation in argument before the panel. We'll continue to study the matter, render decision in due course. Thank you. Counsel may be excused. Madam Clerk, would you call case number three, please? The next case for argument 24-2707, Anthony Schmidt v. Jolene Rebertson.